and the other side divided the 20 amongst themselves. Okay, that's fine. To the extent that it's helpful in focusing your argument, it would seem to us at least that the principal issues on which argument would be helpful are the application, the likely application to California Supreme Court of its, the economic loss rule to the fraud claim in light of its opinion in Robinson. Whether the negligent misrepresentation claim should be treated the same or differently in respect to the third party indemnity claim, what Brent's law has to say about recovery in court under the circumstances of this case. So having said that, if you'd like to add to that. The third issue, fortunately, is not one I need to deal with. I understand that. I was just saying for the benefit of everybody what we at least would appreciate your focusing on. Thank you, Your Honor. My name is Steve Rosenthal of the firm of Kay Scholar. I represent Astrium and Astrium. We're the plaintiff appellants. And as the Court just noted, for purposes of my argument, we have two straightforward issues of California law. One, whether the ELR, the economic loss rule, prevents Astrium as a matter of law from asserting a fraud claim which caused it to incur various costs and penalties relating to satellites that went up in the air and some satellites that never got up into the air and related investigation costs. And secondly, whether the ELR prevents Astrium as a matter of law from asserting a negligent misrepresentation claim. Just as a base point, there is agreement among all the parties that Astrium has adequately stated fraud and negligent misrepresentation claims in its very detailed 47-page Second Amended Complaint. So the issue is really a matter of law. Let me turn first to the fraud claim, as Your Honor requested. Until little more than three years ago, there was not even an intimation in the California appellate law that the economic loss rule on the one hand and fraud on the other had anything to do with one another. Hence, when the district court issued its September 23, 2002 order, it had a relatively easy process of dispatching the defendant's motion to dismiss our fraud claim. It was only because of the intermediate court's decision in Robinson that this issue has even arisen. And that was obviously what led to the order which is now on appeal. In reversing Robinson, the California Supreme Court held that ELR does not bar tort recovery for intentional misrepresentation or fraud in the performance of a contract when such fraud is an independent action based in tort. And the court went on and was very explicit as to what it meant. It said that the California case law, and I could list all of the cases previously, has consistently held that ELR is inapplicable when the conduct amounting to a breach of contract violates a duty which is independent, arises independently under tort law. And what does that exactly mean in this case? It means the fraud claim is independent if the fraud causes a harm that would not have resulted, that would have resulted independently from the mere provision of non-conforming goods. I may not have stated that correctly, but I think the Court understands what I'm saying. If there is a harm independent of the mere provision of non-conforming goods that flows from the fraud and all of the elements of fraud are presented, there is a right to present a fraud claim. And yes, Your Honor. Why don't you deal with the conjunctive? I'm sorry? And the plaintiff is subjected to the possibility of personal damages on account of basically injury to person or property. That is limited both times with an and. I don't think that is fair, Your Honor. I think the Court was using, first of all, it did not use and all the time. It used in addition on several occasions. It listed, Your Honor, four different examples whereby the harm flowed independently of the breach, of which one of those four, and I concede this, was personal injury. But there were three others as well which did not relate to personal injury. The problem with the position that defendants assert is that if they were right, then the California Supreme Court wasted its time in writing about 90% of its opinion. It could have written a much simpler. If they are wrong, the California Supreme Court wasted its time in responding particularly to the dissent and saying, look, the only thing we're saying is there are affirmative misrepresentations and you expose the plaintiff to personal damages. Now, if they just wanted to say affirmative misrepresentations, that would be really simple. They could just say, if you show fraud, you got a tort. But they said, no, we're saying it's A and B, right? I disagree, Your Honor, respectfully, with your reading of the California Supreme Court ruling. Plus, I think the fair reading of the rule of law is set forth independently of that. The rule of law which was set forth is the one I described. Is there a claim, an independent tort claim, and did harm flow from that claim? Admittedly, one of those harms was personal injury, but there were three others. Well, yeah, but the California Supreme Court got to its independent tort claim by saying the tort, that is fraud, in that case, which is similar to this case, arising out of certificates of compliance, affirmative misrepresentations and separate from the breach, that is, it is a separate thing from providing deficient widgets. And it exposes the plaintiff to personal liability that sounds in tort damages, not in contract damages. Therefore, if you've got both of those things, therefore, you've got an independent claim. And that's, that is exactly the point in which I respectfully disagree. Well, I understand you do, but how can you when you've got that paragraph constructed that way? That's exactly what the construct is, and at least as I read it, that's how the California Court of Appeal has basically. You also have, well, I think you have Judge Carlton in the elder. With all due respect to Judge Carlton, what matters is what the California Supreme Court will do. But if that were the case, Your Honor, there's also the mention of the three other forms of harm. There were four forms of harm which were listed in the California Supreme Court's decision. They listed, wouldn't have accepted and used the clutches. They wouldn't have incurred the investigative costs. They talk about the FAA's investigation. If the court were correct, why did the court go into all of these other forms of harm? And why, respectfully, did they talk in terms of in addition the harm, not and? Because it's the in addition or and that makes it independent. You know it's separate if it is separate, and then if it exposes the person to liability, which is different from contract liability, then you've got an independent. Let me even concede, for purposes of argument, the point. It's still, that is still written against a premise which we do not accept. Which is that in any case that does not fall within the square holding of Robinson, that ELR does apply. There is not a scintilla, not a scintilla of evidence in California law that ELR has ever, ever applied other than to negligence and strict liability. And there are two California Supreme Court cases, forget about Robinson. There are two recent California Supreme Court cases which show that the line, that the line is, is it more than negligence? You have the decision, you have the decision in Ehrlich versus Menzies, which says more than mere negligence. That's where we draw the line. You have the same point in Oss. Is it more than mere negligence? Even accepting everything that this court says, this court then has to determine as a matter of law what the California Supreme Court would have done in a case. There is no fraud case in which ELR applies. And even if I concede that the court says, on this square fax, we are demanding it. It doesn't answer the question that this court has to decide. You then have to deal with that void in which there's no case law. And you have to, acting essentially as the California Supreme Court, have to determine what they would have done given Oss, given Ehrlich versus Menzies, given the intimations in Robinson. And we would submit that in that gap, in the gap that goes beyond mere negligence, the rule that the California Supreme Court would adopt is not to apply ELR. And we basically... Were that so, they wouldn't have had to run for cover when Justice Werdegar said, look guys, you've run on this road twice before. First you started expanding covenant of good faith and fair dealing. And you had to flick it in and back off. Then you came up, or maybe not then, but somewhat, you came up with a so-called Siemens tort. And everybody went nuts, and every lawyer pled a Siemens tort, and you finally had to back off and give up. And what you're doing here, guys, is you're saying any lawyer can plea a fraud. Comes in, person says, did you really deliver a widget to my specs? And you say, yep. Not just a breach of contract, it's a fraud too. So every case becomes a fraud case. And they responded to, if I understand right, to dissenting justice and said, no, no, no, no, no. That's not true. You can't just spell out a fraud case by saying somebody lied, et cetera, et cetera, like these guys. You've got to have a person putting people at risk. I guess we do differ. That's what they said. What? That sounds like what they said. I'm prepared to concede that given the dissent, they were looking at the particular facts of this case and said, we can answer the dissent by saying there was a risk. Mind you, that's a critical point. There was a risk of personal injury. There wasn't actual injury. So much of the same problem Your Honor just identified is present even with that rule. But it still does not get this court, does not answer what this court needs to deal with. Because. I know that. I mean. Well, what I'm trying to. The question, I mean, other than rewriting their opinion, how, they, they explicitly say our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss. So you want us to forecast that given, in this case, the California Supreme Court is saying, oh, nope, we didn't write that right. What we meant to do is to eliminate the whole last clause. Now, all we're saying is in light of very recent decisions, the Ost decision of 2002 and 1999, where would they draw the line? Would they demand personal injury? And we would submit, Your Honor, that, I mean, I don't, I don't hear any contradiction of the proposition that there is nothing in the California case law that has ever applied ELR to fraud or, for that matter, to negligent misrepresentation. The line drawn in a decision that was rendered as recently as 1999 and 2000 was, is it more than mere negligence? I think that the court, if the California Supreme Court had to consider this case, it would look at Robinson, it would look at Ost, it would look at Ehrlich, and determine that if there is injury that flows independently of the mere provision of nonconforming goods, that that would state a claim under California law. There is simply, I respectfully suggest that obviously the majority was trying to deal with the dissent. They were obviously trying to say, look, we don't need to reach that issue on the facts of this case because we at least have an allegation of a risk of injury. But the next court, which faces the issue without a risk of injury, has to reconcile its decision with the recent case law. I'm not talking about even case law that goes back to the early 1990s. And the case law, Your Honor, I, I mean, there is simply no case in California law in which ELR and fraud have ever been mentioned in the same sentence. And therefore, we submit that that is really where the line is. Plus, I would point out, just as an aside, that the court did go into a number of policy arguments as to why they drew the rule to where it was. And suffice it to say, I don't need to go through them. Those policy arguments equally apply on the facts of this case to the facts in the Robinson case. They don't turn on the existence of- They, they equally apply to any kind of fraud. Well, but, but that- Not to put too fine a point on it. But, but that's, that's the point we're making. I know that's the point you're making. And that being, then you're really saying the California Supreme Court is a little bit disingenuous in addressing the dissent. Can I make one additional point, because I want to reserve some time? I do want to go briefly to misrepresentation, because on that, in that case, Biley really is dispositive. It is, it's, it's a different fact pattern, but Biley holds that negligent misrepresentation in California is a form of deceit. And it was a case in which it found an independent claim on negligent misrepresentation at the same time it did not find a claim under negligence. It's another case, like Menzies, like Oss, in which the California Supreme Court draws the line between some negligence and, and strict liability on the one hand, and something more than negligence. And the court, as, as this court is aware in Biley, holds that negligent misrepresentation does allow a claim for economic loss. If I can reserve my time. Thank you. Good morning, honors. Fred Bennett appearing on behalf of Northrop, formerly TRW, the appellee in this case, we are going to be dividing up the argument between ourselves and the counsel for Fokker Space, I believe. I have, I would like to make three points to the court. First of all, with respect to Astrium's fraud claim, focusing on Robinson. The first point, which has been alluded to by the court, is that the Robinson holding unambiguously requires that Astrium's claim be barred. Jess, Reimer, you read the. I read one of its holdings. Yeah. Well. There's another holding that says if you got an independent claim, that's enough. I'm sorry. Say that again. Well, that's one of its holdings. It also says we hold that the economic loss rule does not bar fraud and misrepresentation, period. So it actually holds two different things. Well, the holding as, that I'm referring to, which is the one you quoted, is a. Well, this is the gift that keeps giving. Yes, I understand that, but. Well, I, but I think, I think if you're, the court certainly is not holding, and I think the analysis shows that all fraud is exempt from the economic loss doctrine. The court holds, and even Astrium's counsel acknowledges, that the alleged tortious conduct must be independent of the contract. That analysis, that threshold, would have no meaning if all fraud was by definition independent of a contract. And so the holding of the court, the court's intention, I believe, has to be read in that context and in the context of the, not only the language that was quoted, but also particularly the way that the court was drawn out by the dissent from Justice Werdegar. Justice Werdegar's dissent essentially said, leave the economic loss doctrine alone. It's fine the way it is. It handles fraud claims adequately the way it is. And the court, in response to that, said, no, it doesn't, because there are different policies which are involved when you are dealing with acts of affirmative misrepresentation. And it then went on, in response to that dissent, to explain what that policy was. And three times, which I'll allude to here in a moment, three times in that explanation, the court emphasized personal injury, something that went beyond, damages that went beyond the benefit of the bargain, that went beyond disappointed commercial expectations when it said, Robinson's claims are based on Dana's intentional and affirmative misrepresentations that risked physical harm to persons. That's the first time. The second time, Robinson's helicopters are flown by and carry people. The third, a properly functioning spray clutch is vital to the safe performance of an aircraft. Yeah, and it does that in connection with a discussion that distinguishes negligent cases and strict liability cases. Well, I think it talks more about the basic point that Justice Werdegar was making because of those cases. She said that those cases are adequate and the rulings are adequate to deal with a fraud claim. And in saying, no, they aren't, the court had to enunciate or felt it had to enunciate what the additional policy concerns were that took fraud outside. Well, let me ask you a specific question. You know, the certificates of compliance are obviously in the same category as the certificates of compliance that were at issue in Robinson. In addition, you had here quite a few review board meetings at which it is alleged that several of the parties went out of their way to assure Astrium that everything was copacetic. Never mind this problem or that problem. Use the stuff as is. It's okay. There's not going to be a difficulty. Despite knowledge that that wasn't true. Now, basically, your position has to be there's simply no recovery for those extra reassurances that turned out to be fraudulent. That's correct. Why shouldn't there be? Under Robinson. Why aren't they just plain separate? Well, two reasons. First of all, the dispute review board process is a contractual process. It is not outside of the contract. Secondly, Robinson made clear, for whatever reason, that one must get outside of the contract of disappointed commercial expectations. One must get outside of the benefit of the bargain damages. And the only way that that is done, according to Robinson, is if the nature of the damages are outside of that umbrella. Well, let me stop you there. On the first part, the point made in Robinson is that these certificates were fraudulent, and yet the certificates were every bit as much of the contract in that case as the review process was here. So I don't know that your first distinction is a distinction. I think it's a nonsensical point, maybe, or line for Robinson to sound, but they've sounded that point. And so it seems to me participation in the review board under Robinson is separate, qualifies as a separate process, in the same way that providing the certificates to Robinson was a separate process. That may be the case, Your Honor. So we're down to the second, which is the physical injury. And I have to say, I don't understand why that should make a difference in the context of the vendor, of Robinson. Robinson's not the person that's getting killed or hurt. That person surely will have claims someplace. But as far as Robinson's concerned, it's not exposed to anything more really than Astrium is exposed to. That is a financial loss. Well, according to the court, Robinson was exposed to liability. Well, liability, but Astrium's exposed to liability, too. Those are dollars. Those are purely dollars. Robinson would be exposed to personal injury liability. Liability for personal damages. But for Robinson's perspective, those are dollars. It's still dollars. Of course. So why is it different? Well, I think what has happened here is up to Robinson, one had to actually show physical injury in terms of property damage, in terms of personal injury. Robinson recognized and maintained the underpinnings of the economic loss rule as set forth in Seeley, Jimenez, and particularly, I believe, was sensitive to not blurring more than it felt was absolutely necessary the line between tort and contract. Well, let me stop you. Because it seems to me that Robinson is different in at least one respect. Because there wasn't actual physical injury there. It was the potential exposure to liability. You're exactly right. And that's the point I was just about to make. There was an increment that Robinson added to the economic loss evolution. And that was in a fraud case, if you can show the potential for damages that go outside the benefit of the bargain, and you show intentional fraudulent conduct, then you may exempt yourself from the economic loss rule. That is a new step. A small step, but a new one. And one that the court would not go any further than in terms of saying, well, we're going to say any time you allege fraud, you are okay. They did not say that in Robinson. And our suggestion to the court is the reason they did not say that was to create an increment that they thought was conservative, that they thought was rational in terms of going beyond disappointed commercial expectations, but was a little bit further in terms of a step than showing actual physical injury, actual property damage. And that's why we say this personal damage aspect of the opinion is so important to Robinson. If you don't have it, then you are in a position where any fraud alleging anything in terms of damages, disappointed commercial expectations, and nothing else is okay. And the economic loss rule will not hurt you. That is a distinction which the Robinson court did not intend to make. And I think one example of the danger of that is what has occurred as shown in the record here with Astram. Astram started out its case with a negligence claim. That negligence claim was knocked out by our summary judgment motion. The result was the pleading of a negligent misrepresentation and fraud claim. If you look at the negligent misrepresentation claim, it is exactly the same in terms of allegations of wrongdoing, in terms of damages, as a negligence claim. If you look at the fraud claim, it is exactly, except for the element of intent, exactly the same. And exactly the same in terms of damages alleged. It was a response to being disappointed with a negligence claim that didn't work. That's not, in our view, what the Robinson court wanted to allow. Robertson is saying, and the policy discussion says, you don't anticipate, you don't anticipate the need to contract against fraud. You don't think you have to put into your contract a guarantee that someone will respond honestly. And Astrea makes the same argument here, particularly with regard to the follow-up investigation and their effort to find out what had gone astray. You really wouldn't expect a contract to say, and we will answer honestly when we're asked later. So as to that element which Robinson appears to describe as separate, at least, perhaps not up to independent, whatever that is, but seems to, it clearly says that's tortious conduct that's separate. That's a little different from saying any breach of contract can be called a fraud. I don't know that it is, because here you had a contractual requirement in Robinson to provide certificates of conformance. That's what the court was focusing on, not an extra contractual requirement. And that's my observation before. I'm not really sure why certification is enough to make it separate, but Robinson says it's enough to make it separate and treats it as something separate from the contract because, presumably, the FAA requires certification. Well, I think what Robinson does in connection with the nature of the conduct is take from Ehrlich. It takes from Ehrlich a quotation that indicates that where the conduct is intentional, focusing on intentional conduct gives substance to the proposition that a breach of contract is tortious only when some independent duty arising from tort law is violated. So, certainly, the intentional nature of the conduct is an important element, but it's only one element. Well, on that, I mean, it seems to me if you look at the facts of the cases, I don't think Robinson's case was as good as Astrian's. There's nothing that really says that I read in Robinson, and there are probably facts outside what's recorded in that decision, that says that Dana, when it issued the certificate, so responded to Robinson, knew it was saying things that weren't true. The allegation here by plaintiff is that when we tried to find out what had gone astray, we got intentionally untruthful answers. That's something to me that seems pretty significant to make it at least separate from the breach of contract. I'm not disagreeing with you, Your Honor. I think, but again, I think as far as future guidelines that Robinson gives us, it is one, but only one element. Certainly, the conduct as pleaded here by Astrian is arguably more intentional, more egregious than the jury found in Dana. And maybe that means that one, the first element is more easily satisfied by this pleading. That suggests to me not that we disregard the second element, but it takes it away from what I hear you saying, which is that if we don't draw the line here, any breach of contract case becomes a fraud case. I don't think that's true. I think we have something more alleged here than a breach of contract. We have this investigation stage alleged misconduct that is separate from simply performance or non-performance or non-delivery of conforming goods. So if we get to this narrower subset, the question becomes, is that subset narrowed even further by the physical injury or property damage requirement? And our answer would be, yes, it isn't. It does have damage. And on that, what I've had trouble with is trying to figure out how Astrium, as an entity, is any different from Robinson as an entity in two respects. In one, they're both corporations. They're not actually going to suffer the physical injury themselves. And as set up, it's not their product that's going to be destroyed. They're facing the risk of a liability claim against somebody else. Well, Astrium faces the risk of claims against somebody else, too. And as far as the corporations are concerned, it's purely dollars. It isn't their life that's at risk. So why is Astrium's situation different? I'm really saying, I see what the Robinson court says, but it also could be saying, we don't have to rule on that case today. Why should so much weight be put on the risk of liability to somebody else for physical injury as opposed to their disappointed economic expectations? Not the plaintiffs here, but this third party who can claim against the plaintiff, because Robinson points to the liability to a third party as the source of enough to make it independent. That's right. And again, I mean, I think what the Robinson court is doing here is searching for and finding, in its view, and giving guidance for the requirement that the damages you allege have got to be outside of this benefit of the bargain, disappointed expectation umbrella. And in Robinson's view, it was sufficient to show a potential for something that went outside, that was not under that umbrella, in order for the fraud claim to be allowed, without destroying the underpinnings of the ELR that were the basis of the court's opinion. But why is that so different? Because Robinson surely expects to manufacture helicopters that work and understands that if they manufacture helicopters that don't work, they're at risk of this exposure. So it's the same bargain that Robinson was seeking to get working parts for working helicopters. Well, there's a rationale to that. But the court, I think if you're looking for guidelines from the Robinson court, which is obviously what this court is doing, the court sees it differently. This is what you need to get outside of that umbrella that we want to continue to protect so that these lines are not blurred. Let me just quickly say, because I want to leave time for my colleagues, with respect to the negligent misrepresentation claim. You know you've got two minutes left. Yes. With respect to the negligent misrepresentation claim, I think Robinson is clear that intentional conduct is critical as part of its test. And the cases in California, all the ones we've cited support that. Thank you. Good morning, Your Honors. Good morning. My name is James Hunt for third-party plaintiff Pilkington Electronics. I had hoped in my two and a half minutes to address the question of the dismissal of our fraud claim because I think the court drew inferences against us, the non-moving party, improperly and drew them in favor of the moving party, Fokker. But I think I'm your guy on French law, Your Honor, so I've got to address that very quickly. First of all, I would say that the whole subject was not considered by the court below at all. The court simply imported a choice of law finding it had made in the settlement agreement into the substantive contract. It didn't consider the French law point or choice of law provision in the Astrea and Fokker contract at all. There were dueling expert opinions, French experts. The bottom line is this. The RR expert, that is OSC and Pilkington, they're two separate experts, basically say that there is nothing in French law, even in the contractual context, that precludes the tort claim. Fokker's expert says that is not so. He disagrees. However, he says, or he admits, that despite the fact that there is a contract, there is a cause of action in tort under French law for what he called willful misconduct, or at least that's the English translation, willful misconduct or gross negligence. I would argue, however, that it's really, when properly viewed, moot in this sense. I would argue that if we do stand in the shoes, that is, if Pilkington and OFC do stand in the shoes of Astrea vis-a-vis Fokker in prosecuting our third-party claim, we would and could exercise Astrea's rights to terminate the contract for default. There would be no contract. There would be a clear open field for any tort claim in that case. I would like to very briefly address two errors that I believe were committed by the Court below. Firstly, as to, this is in granting Fokker's motion to dismiss, I'm sorry, motion for summary judgment to. Kagan. You're on turf now that's terribly familiar to all of us, and the time is, has run. I mean, what is a survived summary judgment is something that isn't quite as tricky as what French law says. Well, Your Honor, if I don't have time, I don't have time. Thank you very much. Who is going to respond to? All right. Ms. Wilson, you'll take about the same amount of time, which is a little less than two minutes. Thank you. May it please the Court. My name is Diane Westwood Wilson. I'm here on behalf of Fokker. I really have only one comment to say in response to the French law issue that has just been put forth by Mr. Hunt. Their expert, in fact, did not state that there was a tort law cause of action. Their expert said there was no economic loss doctrine under French law. And our position is that's because there's no recovery in tort. Our expert said that clearly in their declaration in support. They said it in reply. It has never been rebutted. Thank you. Let me make sure I understand one thing. It is true, is it not, that the district court never addressed this issue because it applied California law? That's right, Your Honor. They said there was no recovery in tort in any event, so it didn't matter either way. Thank you. Mr. Rosenthal. Thank you. I have three points I'd like to make, and hopefully this is new. First point, and that is the fact is that defendant's argument actually eviscerates the California statutory law of fraud. Remember, California civil code by law provides for fraud damages for economic injury. If ELR subsumes, essentially, all economic injury for fraud, the statute 1709, 1572 is eviscerated in our view. Secondly, building upon the point that Judge Clifton made and I think others, there was fraud independent of actions required by the agreement. There were investigations that took place in which we have alleged that we were given consciously false information, that there was negligent misrepresentation and fraud that took place. Plus, again, a point that was made by the panel, the COCs are essentially analogous in this case to the COCs in the other case. Lastly, how does Astrium or a future Astrium protect themselves in a regime in which fraud is essentially non-actionable? The rule we would submit will cause a fleeing from California to the 18 states that have the opposite rule. There are only four other states that have a rule which provides that ELR applies to fraud. At least 18 states take the opposite position. We understand we're not asking you to assay, but the fact of the matter is that the reason the rule is in place is as a practical business matter. Businessmen cannot conduct business, especially sophisticated businesses of this type, in which they are having fraud throughout the process, where COCs are fraudulent, where when they  So there is no question that we can't tolerate, and we would submit that properly presented to the California Supreme Court on these facts, they won't tolerate either. We submit that fraud is so adverse to the public policy of the State of California that there is no question that the ELR rule would apply to it. The California Supreme Court would not tolerate it, nor would the business climate of the State tolerate it. Thank you. Thank you, Mr. Rosenthal. Thank you all for the argument. The matter just argued will be submitted, and the Court will stand and recess. Thank you.
judges: Fernandez, Rymer, Clifton